v. Roberts, 173185. We have Ms. Rosano and Mr. Carswell. I won't call you guys a bad judge. Is that the first time you've had all 12 counsels state the cases? I don't know how many. It's the tenth of the world. I'm saying, is that the first time you've ever had two lawyers argue about the cases back to me? No, I haven't. It's amazing. We were commenting about the fact that it's the rarest of occasions that we have two lawyers arguing two cases back-to-back. That is quite the feat. Yes, absolutely. All right. May it please the Court. Good morning, Your Honors. My name is Susan Rosano, and I represent the appellant, Mr. Richard Grissom. At the outset, I would just like to quickly note that defendants concede that this Court would be a court of first instance with respect to Mr. Grissom's Eighth Amendment claims. And they also agree that the district court applied the wrong standard to Mr. Grissom's equal protection claim. And as such, we submit that those claims should be remanded to the district court. Accordingly, I'd like to focus my arguments this morning on Mr. Grissom's due process claim. The Supreme Court recognized over a century ago that solitary confinement bears a further mark of terror over a prisoner's capital sentence. And justices of the Court have acknowledged the profound psychological and physiological damage that is caused by this form of punishment. Mr. Grissom comes before you today having been exposed to that dangerous regime for 20 years. And he comes before you as a prisoner for 20 years. Continuous? They were continuous 20 years. Never got out. That's correct. From 1996 to December of 2016. And he was exposed to that regime despite the fact that the defendant's own records reflect the fact that he no longer posed a security risk and that he deserved the opportunity to be released through the behavioral modification program and then to the general population. So I think there are, with respect to Mr. Grissom's procedural due process claim, there are really four issues before the Court. The first is Mr. Grissom is satisfied three of the four demarco factors, establishing that he has a liberty interest in avoiding protracted terms of solitary confinement. The second is that Mr. Grissom has pointed to Supreme Court precedent as well as the law of seven other circuits. Establishing that his right to avoid protracted solitary confinement is clearly established law. Third is that the prisoner or, excuse me, the prison officials did not provide Mr. Grissom with meaningful reviews of that confinement as required by the Constitution. Turning to the clearly established law point, contrary to the defendant's argument, defendants require Mr. Grissom What is the most, in your evaluation of this case, the most severe infraction that caused or occasioned the continuation or original imposition of solitary confinement, and which is the least infraction? I know that some of those orders, I think one, they changed a semicolon to a comma and otherwise, a semicolon to a colon, and it was otherwise identical. I want to get a feel for these infractions that caused this extreme duration of confinement. I would submit that we are equally mystified as Your Honor is. The infractions in the record are the most severe and the least severe, as you see them. The first infraction was an alleged, that Mr. Grissom was alleged to have been running a drug trafficking ring. That gets him in in 1996. Seven years elapsed where he has no disciplinary reports at all. In 2003 and then in 2005, he is And during that period of seven years, there, how many continuations of the confinement are there? I mean, he was in a Was it just one? You're in confinement and seven years later? Yeah, so he's in the general population as part of his capital sentence, and then he is alleged to have been the head of this drug trafficking ring. He gets into solitary confinement in ADSEG. No disciplinary report issues or no charges issue, by the way, with respect to this alleged drug trafficking incident. So he's placed in ADSEG for seven years. No disciplinary reports at all. In 2003, while in ADSEG, he is discovered to be in possession of cell phone. In 2000, which is, continues to stay in ADSEG. In 2005, I think in June, and then again later in the year. Counsel, we've read that. I think Judge Lucero is asking you, in your opinion, what is the worst violation and what is, you think, the least of the violations? Well, the defendants equate them all the same. I mean, what the defendants say is that he poses a security risk because he's gotten these cell phones. I don't know that any one of them is any worse than any of the others in my view. Well, the drug traffic is worse than possession of a cell phone, I would guess, for example. Or the leadership of a drug deal going on in prison is pretty bad. Well, it's, again, it's, in the record, it's an alleged allegation from an informant for the prison. It got him put in confinement. It did get him put into confinement, Your Honor, but again, no disciplinary, it's hard to imagine that he's this mastermind head of a drug ring in a prison and gets no disciplinary report for it and isn't charged criminally for trafficking drugs in a prison. So he gets placed into solitary confinement, is found with cell phones, and then from 2005 to 2010, he has, or 2015, he has no disciplinary report. And part of our argument under the DeMarco analysis is that there's no penological justification. The farther away we get in time from these cell phone violations especially, and from the initial incident in 1996, the farther away we get in time from those incidents, the more tenuous the relationship between the incident and the punishment becomes, especially considering the fact that during those 10 years, after the 2005 incident, prison records reflect the fact that Mr. Grissom was behaving well, did not pose a security risk, and ought to be released to the, considered for the Behavioral Modification Program and then released to the general population. Kennedy. It seems to me your biggest hurdle in this case is clearly established law. And he came before this Court before. It's an unpublished opinion, but we don't generally write unpublished opinions that we can say are contrary to clearly established law. In his first appeal, we found no reversible error in the district court's analysis, which included essentially things that are unchanged between the time of the events in that case and now. For example, we found no reversible error in the district court's statement that the conditions he endured in segregation were not extreme or atypical. Now, how could that not be contrary to clearly established law then, but be contrary to clearly established law now? There's nothing from the Supreme Court, I don't think there's anything from us either, that would override that statement then. How do you overcome, in particular, our prior decision with respect to Mr. Grissom? So the first point, quickly, is that defendants have waived the preclusion argument. This is not a preclusion argument. I just wanted to make sure. So with that aside, on the clearly established law point, we would submit that the clearly established law goes back to Wilkinson in 2005. But taking Grissom on the case. Well, we'll say that was the case. We didn't decide Mr. Grissom's first appeal under the clearly established law. We were addressing it on the merits. If it were clearly established that these conditions were atypical and extreme by Wilkinson, that's inconsistent with our saying the district court didn't commit reversible error in finding the opposite. I don't see how we can be consistent on this court unless we're saying our prior opinion was just totally off base. Well, I think the other, I think Grissom, the Grissom 1 opinion, the law doesn't freeze in time at Grissom 1, right? So since Grissom 1, we've got. That's what I, that's what you need to do. Show me how the law changed. Yeah. So after Grissom 1, we have 1, 2, 3, 4, 5 circuits that have now weighed in on this issue on varying amounts of time on conditions of confinement that are substantially similar to what Mr. Grissom experienced. And we don't. It takes a lot of out-of-circuit authority to make the law clearly established in this circuit. Yeah. You think there's that consensus? You think these other cases establish a consensus of the other circuits that the conditions that we essentially upheld in Grissom 1, that was 5 years ago? Grissom 1 was 2013. Yeah. Yeah. Well, at this point. But that has changed by the time of the events in this case. We have 7 circuits that have analyzed conditions of confinement like Mr. Grissom's. And it's not surprising that there are not more of these cases or many of these cases. I think Your Honors are probably well aware of the fact that there are mercifully few examples of terms of solitary confinement that are as long as Mr. Grissom's. Recently, the 7th Circuit analyzed, excuse me, the 4th Circuit analyzed a term of 20 years and found that to be a, or found that, found that prisoners have a liberty interest in avoiding that long confinement. The length of term here is very disturbing. But what we said before wasn't on the length of confinement issue. It was whether the conditions are extreme. And I thought that was related to the restrictions on his activity at the time, not how long those restrictions are in play. Am I wrong about that? I don't disagree with you, Your Honor. But I think that under Wilkinson and under other cases from this circuit, duration is an element that cannot be ignored in this analysis. Duration is a critical part of this. Well, it's irrelevant if the conditions are in extreme, and whatever the term is, because otherwise, someone who's just in prison for 20 years could say that his due process has been violated. It's got to be something, it's got to be worse than being in prison, because there are people in prison for very long times. It's the solitary confinement issue that's important. I think that Wilkinson stands for the proposition that the duration of the confinement is extreme under any baseline, whether we're looking at other prisoners in ADSEG or other prisoners in the general population. So Mr. Grissom's ---- So just being confined in general population for 30 years would give rise to a claim? No. Being confined to ADSEG for 30 years would give rise to a claim. That's our argument. And I think that that's what the Supreme Court was getting at in the Wilkinson case. Your Honors, I see that I have three minutes left, and I had intended to reserve. Reserve. Thank you. May it please the Court, I'm Dwight Carswell, appearing on behalf of the defendants, and at counsel table is Roger Slead, who's counsel for two of the defendants as well. Thank you. Counsel, this is the questions that Judge Hart's raised. I'd like to continue to pursue that line of questioning. Is it purely the conditions of solitary confinement that are the problem, or is it the presence in solitary confinement? Or do you make a distinction? Well, under the DeMarco factors, there are a number of factors that need to be looked at. But if the conditions aren't extreme, if it is just the same conditions as the general population, for instance. So if you have somebody sentenced, garden variety defendant, get sentenced to prison for 12 years, and the prison is very crowded, and the warden decides to place that defendant, we'll call him G.V. defendant, garden variety. G.V. defendant goes into the, he places him in segregation, solitary confinement. But all the conditions are okay. In other words, there's nothing, he's treated very nicely, the soft music, whatever, in the solitary confinement. Is it okay for him to remain in solitary confinement for 12 years as long as, I forget the words of Judge Hart's question, but whatever those. Not extreme or atypical. Yeah, not extreme or atypical. Yes. Would that be okay? That would be. I mean, the conditions have to rise. Just a second. I want to make sure I get that answer. He said yes, that would be. Yes. The condition, I mean, it would depend on the conditions of the confinement. So the condition itself, the very condition of solitary confinement in and of itself is not, cannot be a problem. The condition can be, I mean, if it were extreme. The conditions in confinement, but I mean, the fact of confinement standing alone is, so long as the conditions thereof are not extreme. Just the fact that it's called administrative segregation does not, in and of itself, give rise to a liberty interest. You have to look at the conditions along with the other DeMarco factors. And here, as Judge Hart was pointing out, the biggest problem is in Grissom 1, this court held that Grissom had not, from the district courts holding that Grissom had not established a liberty interest. And there's no law since then, which that was a 2013 case, that would clearly establish otherwise. The cases from other circuits, some are even post-dating his release from segregation. But even those other circuits, they don't apply the DeMarco factors, the same framework as this court does. And so they wouldn't have put defendants on notice, much less placed the question beyond debate. And then even looking at the individual DeMarco factors, it's not clearly established that even a single DeMarco factor favors Grissom. As to the first, whether it was reasonably related to a legitimate penological interest. In Grissom 1, this court held that it was. And part of the reason was because of Gordon Heimgartner's affidavit in this case. Aren't there a whole series of psychological studies that demonstrate that solitary confinement, in and of itself, I'm not talking about the conditions of confinement, but the confinement, solitary confinement itself, is extremely destructive from a personality's profile standpoint? I mean, again, it would depend on the conditions of this confinement. No, no, no, no. I'm just asking, aren't there psychological reports that indicate that? There are psychological reports that indicate under at least certain conditions, some inmates have developed psychological issues. But it wasn't clearly established. I mean, under Rezac, for instance, where this court looked at the AVX Supermax prison, and this court held that that was an extreme under the DeMarco factors. This confinement was very similar to that. So it can't be said it was clearly established that the conditions here were extreme under both prisoners. I'm not talking about the conditions of the solitary confinement. I'm talking about the solitary confinement in and of itself. I don't know how to make that clearer than to use those words. I'm carefully weighing my words. I mean, just because it's called administrative segregation does not in and of itself cause any psychological damage. Just being kept away from people a lot is really hard on people psychologically. I mean, there may be good reasons to be more restrictive about solitary confinement. If we had to get to the merits of this case, I'd have some problems. I think that's what Judge Lucero is asking about. And I share his, I think, concerns in that regard. I understand. I mean, it does depend to some extent to what extent is it really solitary. I mean, it's called administrative segregation. And there's certainly disputed facts about how much interaction they have. But as in RESAC, the court there indicated that although there's disputed facts, there was at least some evidence that there is ability to communicate between inmates. And the same is true here. If you're saying it's like Supermax, Supermax, you don't have any contact with other people. So I'm not sure you want to say it's like this, like Supermax, unless it is. I think this is actually less extreme than the ADX RESAC case. Well, does the record here tell us about that? Does it address that issue? Several points on that, yes. I mean, it does indicate there are some indications that he had communication with other inmates. For instance, he was able to get those other inmates to provide him with affidavits to support his case here. When he wrote the letters to the prison guard. Oh, I understand that. But I'm talking about, I'm not talking about a rare occasion. I'm talking about on an ongoing basis. Yeah. So this is not really solitary confinement is what you're saying, that there was opportunity to co-mingle with other defendants, with other prisoners, to socially interact with them. I don't know that I'd go so far as to co-mingle, but as I was going to say, you know, in the letter to the prison guard, he said something about he spoke quietly to her because he was afraid of his nosy neighbors. So at least that indicates that there was some ability to communicate between cells. His reports also indicate that he mentored a fellow inmate while he was in administrative segregation. So he did have some contact. He also had, unlike in Rezac, daily telephone privileges. He could call and communicate with people on the outside. In Rezac, this Court noted that those inmates only had two 15-minute telephone calls per month. So I think the conditions here are even less extreme than in Rezac, where this Court held that they weren't extreme. So certainly from a point of clearly established law, Grissom just can't meet his burden there. So you analyze this case as a conditions of confinement case, essentially, under DeMarco. That's one of the core factors, yes. And the other factors, as I was saying, I mean, the first is kind of the reasons for the confinement. And here, Ward and Heimgartner spitted an affidavit saying that Grissom had, while in administrative segregation, been able to obtain cell phones and other contraband. They'd also shown an ability to compromise prison guards. And both of those were factors in the two recent escapes from the Kansas Department of Corrections facilities. Well, I really appreciate your candor, because it starkly, your answer to my first question, really starkly raises the issue here. You're saying that as long as conditions of solitary confinement or administrative segregation are okay, that really somebody could go in for the entire duration of their sentence, and that would not violate any constitutional concerns? I mean, certainly whether they're extreme is one of the DeMarco factors. And, yes, if that wasn't met, I don't think it would be possible, at least under this Circuit's case law and the Supreme Court case law, to make that conclusion, at least much less clearly so. I mean, maybe you'd ultimately come out the other way, but it's not clearly established for sure. Right. And, anyway, as I was saying before, I mean, the prison officials really viewed him as an escape risk, and that factor is reflected in all of his segregation reforms. And so that's the reason why. Now, in prison, once this Court has second-guessed the prison officials' determination there, this Court in Res Act said that, no, we don't engage in such executing scrutiny. We understand the need for reasonable deference to prison officials to make determinations about how to manage their prison. And so the first DeMarco factor is basically just a rational basis test. And given the history and their concern about his escape risk, that factor is certainly met here. The third factor, everyone agrees, favors the defendants. And then the fourth DeMarco factor, indeterminacy. On that factor, Grissom argues that, well, because there was no fixed end date. Well, even though it does, let's discuss it very briefly, the third factor. The third factor? Yes. Well, this placement didn't extend Grissom's placement in prison, because he's going to be there for the rest of his life, basically. It's until 2090 or something before he could possibly get out, just because of his multiple life sentences. So, again, they concede that that was the case. And under your previous answer, if he, as long as the conditions, the conditions were being met and there were no problems with the conditions of confinement, he really could be there an additional, well, until he died? There would be no liberty interest if the conditions were not sufficient to give rise to one. Yes. So as I understand your argument, even though a man or a woman, for that instance, is put in prison for basically their whole life, there are no limits to the possibility of that person spending that entire time in solitary confinement? No, that's not our position. If the conditions are sufficiently extreme. No, that's what I'm saying. You're arguing the demarcable factors and everything. But given those factors, by reason of the defendant's own conduct and actions that they perform, it's your position that based on that conduct, they could be held in solitary confinement for their entire life that they're in prison. We agree if the conditions were not sufficiently extreme, yes. Of course, under the demarcable factors, that's a balancing. I'm sorry. That's the case of a lot of people. It's the supermax, isn't it? Yes. It's the supermax. That's right. What is the difference? If it's good in supermax, then you're saying then it's under the conditions of supermax. This is really no different. It's what I see you're comparing in this instance and that in supermax. I mean, you look at all the demarcable factors. Am I correct in my thinking that there is no difference than what we have in supermax? It becomes, in essence, a supermax. I mean, this case, we believe, is less extreme than supermax, as I mentioned earlier. Well, yes, but it could be the same even in a prison that is not the supermax. Well, you would look at all the demarcable factors like that. It could be the same. It could be the same. And, again, in Rezac, there was those conditions, and the court found no liberty interest. The person there had been held for 13 years. So that brings me back now to DeMarco and in this case. So the conditions of his confinement is based primarily a lot on his conduct during this 20-year period. Is that correct? His conduct certainly played into it. I mean, it was the overall conclusion that he posed a serious escape risk. That was shown by the fact that he was able to obtain cell phones while in segregation, that he had compromised prison staff. On one occasion, he obtained a note from someone on the outside. By compromising, do you mean he bribed the state? Somehow. I mean, he was in administrative segregation, and he was able to presumably get prison staff to assist him in obtaining contraband. It seems to me like you've got a problem with prison staff, but let me ask this. I've been listening carefully as you answered the questions from Judge Baldock and Judge Hartz, and also my own. It seemed to me I didn't keep track numerically, but every answer includes the word DeMarco. So that leads to my question. Is this case, as you understand it, solely about conditions of confinement? No. Because I understood the case to be arguing that the fact of placing somebody in solitary confinement, absent some extraordinary sentencing considerations such as the type of consideration that places people in the supermax, that absent something like that, there is no stand-alone right under our American Constitution to be free of solitary confinement unless there's cause. Absent DeMarco factors. Under this circuit's precedent, at least, you have to look at the DeMarco factors to determine whether... I understand. There you go again. I mean, that's the circuit's precedent, so at least it's better, clearly. But my question excludes that. That's what I'm trying to get at. Yeah, I mean, defendants certainly argue that here just the number of years alone gives rise to a liberty interest. Rezac rejected that argument. The defendant there was held for 13 years. This Court said duration has to be considered in termination, in tandem, excuse me, with indeterminacy, which was the fourth DeMarco factor. And like I said, plaintiffs there are arguing that as long as there's no fixed end date, that factor favors them. And Rezac and Grissom 1, for that matter, held the opposite. They said that if there are periodic reviews, Grissom, excuse me, Rezac held that that fourth factor was not satisfied because of the existence of periodic reviews. I just briefly want to touch on the two other issues. On the Eighth Amendment claim, that is not waived. This Court can affirm on any basis supported by the record. You have to remember the procedural posture of this case. This was decided on a motion to dismiss, so defendants, which was converted to summary judgment, the State defendants haven't even filed an answer yet. So qualified immunity is still very much alive in this case on the Eighth Amendment claim. With respect to equal protection, the district court did apply one wrong standard, but the district court gave two reasons. And the second, Grissom hadn't identified any similarly situated inmate. Applies here. That was a correct finding. That's the end of my time. Thank you.  Thank you. Thank you for recognizing the clock. Your Honor, I'd just first like to note that. Well, counsel, I kind of didn't question you during your first argument, but I want to go back under the demarco factors and also under the conditions, as I read, of what your client is so-called supposed to have abused in the system. On the basis of what I've counted, and I've lost count again, of the number of instances, let alone also considering Grissom one, it would appear to me that there were penological values in why your client ended up staying in solitary confinement so long. Now, where am I missing the boat there? I mean, there's got to be some responsibility. He's already in prison. And I have problems with the 20 years. But when you back off and look at it as a whole, we've had Grissom one here, and then we see the actions and conduct, supposedly, of what your client did to stay in consolidate. Then I'm not quite sure I see the error. The issue that we have on the penological justification is the amount of time that elapsed between the conduct and the number of years that Mr. Grissom went where he had no disciplinary infractions at all. And, in fact, the prison records reflect the fact that he was behaving well, that he didn't pose a security risk, and that he ought to be considered for release to the behavioral modification program. So we would write an opinion that says that if you're in consolidate confinement, that to avoid errors like we have here, that the prison is obligated every other year or every two years to give the person a review as to why they're in solitary confinement? No. Mr. Grissom got reviews, and he got reviews every 30 days. I don't dispute that. The problem that I or the argument that we present to the Court is that during the 10 years that he had no disciplinary infraction, at a certain point in time, when you get away from the infraction, the punishment becomes not only excessive but unjustified, especially when the defendants themselves are saying he no longer poses a security risk. And I take issue with the very last, the letter that defense counsel referenced. I mean, if Mr. Grissom posed a security risk and he manifested these behaviors that show that he's able to compromise security staff, and he sends this letter to a prison guard, they let him out nine months after that. And yet they held him in solitary confinement for 10 years on a cell phone charge. That is rather interesting. It is very interesting to me, Your Honor, and I think it presented a significant problem for the defendants on that score. And going back to the conditions of Mr. Grissom's confinement, Wilkinson held the conditions very much like what he was exposed to, created an atypical and significant hardship. Your Honors, I see I'm out of time, but I have one last point I'd like to make to the Court. We peppered you with questions. If you need a minute to make your points that you want to leave us with, please do so. I guess the last thing that I would leave the Court with is to the extent that this Court finds that there is no clearly established law, we would ask that this Court lay down the marker in a published opinion that 20 years of solitary confinement is an atypical and significant hardship giving rise to liberty interests. And I'll leave the Court with that. Well, and I leave you with this. Would you please extend our gratitude and thanks to the Northwestern School of Law for their good work I believe. Yes. Thank you. Absolutely. Mr. Greenfield is here with me today, and he's the one that brought the case to my attention. Mr. Greenfield, if you will communicate the Court's appreciation, please, to your law school. Thank you. Thank you for your time this morning. Thank you, Your Honor.